UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Kai Lock *et al.*,<br><br>Plaintiffs,<br><br>-v-<br><br>Costco Wholesale Corporation,<br><br>Defendant. | 2:23-cv-07904<br>(NJC) (ST) |

## MEMORANDUM AND ORDER

NUSRAT J. CHOUDHURY, District Judge:

Plaintiffs Kai Lock, Kyle Straker, and Michael Nickich ("Lock," "Straker," "Nickich," and collectively, "Plaintiffs") have sued Defendant Costco Wholesale Corporation ("Costco") to recover unpaid overtimes wages and other damages for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the New York Labor Law ("NYLL"), Articles 6 and 19. (Compl., ECF No. 1.) Before me is Costco's partial motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), which seeks dismissal of Plaintiffs' wage statement claim under NYLL § 195(3) ("Section 195(3)") for lack of standing (the "Motion"). (ECF Nos. 18–20.) For the reasons set forth below, Costco's Motion is granted, and Plaintiffs' Section 195(3) wage statement claim is dismissed.

## BACKGROUND

The Complaint alleges that the Plaintiffs worked as Junior Managers at Costco between 2020 and 2022. (Compl. ¶¶ 13, 31, 47.) The Complaint alleges that as Junior Managers, Plaintiffs regularly worked more than forty hours a week and identifies several specific work weeks in which Plaintiffs worked more than forty hours per week. (*Id.* ¶¶ 14–19, 32–36, 48–53.)

According to the Complaint, however, Costco paid Plaintiffs a fixed salary for forty hours of work each week (*id.* ¶¶ 13, 20, 31, 37, 47, 54, 95–96) and failed to pay Plaintiffs overtime pay during those weeks where Plaintiffs worked in excess of 40 hours (*id.* ¶¶ 19–21, 36–38, 52–55).

The Complaint also alleges that Costco failed to record the number of hours that Plaintiffs worked and provided Plaintiffs with wage statements that listed an inaccurate number of hours worked. (*Id.* ¶¶ 22–24, 38–40, 56–58, 104–04.) Lock worked more than forty hours during the weeks of December 6, 2021 and December 19, 2021, but was not paid for overtime hours worked during those two weeks, and his wage statement incorrectly stated that he had only worked eighty hours during that two-week period. (*Id.* ¶¶ 19, 21–22, 24.) Similarly, Nickich worked more than forty hours a week during the weeks of May 24, 2021 and June 6, 2021. (*Id.* ¶ 53.) Nickich was not paid any for any overtime hours worked during those two weeks, and his wage statement incorrectly reported that he had only worked eighty hours during that two-week period. (*Id.* ¶¶ 55–58.)

The Complaint alleges that these inaccurate wage statements failed to provide Plaintiffs "with the information necessary to determine whether their weekly hours ever exceeded 40 in a single workweek, entitling them to overtime" and that "[t]his hindered Plaintiffs . . . ability to challenge the unlawful wage payment at the time of the payment." (*Id.* ¶¶ 109–10.)

On October 23, 2023, Plaintiffs filed the Complaint, bringing three claims on behalf of themselves and a class of similarly situated persons: (1) failure to pay overtime wages under Section 207(a)(1) of the Fair Labor Standards Act (the "FLSA"); (2) failure to pay overtime wages under NYLL Section 650; and (3) failure to supply an accurate statement of wages as required by NYLL Section 195(3). (*Id.* at 15–17.)

2

On February 1, 2024, Costco served Plaintiffs with its partial Motion to Dismiss and supporting memorandum (Mot., ECF No. 18; Def.'s Br., ECF No. 18-1.) Plaintiffs opposed on February 16, 2024. (Pls.' Br., ECF No. 19). On March 7, 2024, Defendant served its reply (Def.s' Reply, ECF No. 20) and filed the fully-briefed Motion. (ECF Nos. 19–20.)

On April 5, 2024, Plaintiffs filed a motion to conditionally certify Plaintiffs' proposed collective under the FLSA. (FLSA Collective Cert. Mot., ECF No. 24.) Each of the Plaintiffs submitted a declaration in support of this motion (collectively, "Plaintiffs' declarations"). (Lock Decl., ECF No. 24-2; Straker Decl., ECF No. 24-3; Nickich Decl., ECF No. 24-4.)

In Lock's declaration, he attests that, as a Junior Manager at Costco from June 2021 to about January 2022, he "regularly worked over 40 hours a week" and that he "generally worked 65 hours each week" (Lock Decl. ¶¶ 5, 7, 26, 33.) According to Lock, he was scheduled to work "five nine-hour shifts per week," and during busy times, he was scheduled "to work a sixth nine-hour shift." (*Id.* ¶¶ 27–28.) Lock additionally affirms that he "had to work before and after [his] scheduled shift" because while he was "scheduled to begin working at 3:00 am, . . . for approximately half of [his] shifts," he "was called to come in at 1:00 am or 2:00 am," and while his "typical shift was schedule to end at noon," he was "always required . . . to stay late, not leaving until between 2:00 pm and 5:00 pm." (*Id.* ¶¶ 31–32.) During these shifts, Lock attests that he "always had to take a shortened meal break" and "was not able to take [an] uninterrupted meal break exceeding 10 minutes." (*Id.* ¶ 29.) Lock additionally attests that he "know[s] that Junior Managers were paid a salary without overtime pay" because he "worked over 40 hours every week and was never paid overtime" and because he has "spoken to other Junior Managers about not getting overtime pay despite the fact that we work over 45 hours per week." (*Id.* ¶ 41.)

3

In Straker's declaration, Straker attests that, as a Junior Manager at Costco from July 2020 to 2022, he "regularly worked over 40 hours a week," that he "generally worked 50 hours each week," and that he "worked about 60 to 70 hours per week" during busy seasons. (Straker Decl. ¶¶ 2, 9–10, 27, 31). Straker affirms that he was scheduled to work "five nine-hour shifts per week" and "at times," during busy periods, he had to work a sixth shift. (*Id.* ¶¶ 28–29.) He attests that during his shifts, he "regularly worked about 10 to 12 hours per day" and, during the busy periods, he "regularly worked 12 or more hours per day." (*Id.* ¶¶ 28–29.) He also states that he "regularly" could only take a meal break for fifteen minutes or less. (*Id.* ¶ 30.) Straker affirms that he knew "that Junior Managers were paid a salary without overtime pay" because that information "was stated on the job postings for these positions," which were "either placed on the bulletin board by the breakroom or were available through the company portal." (Straker Decl. ¶ 39.)

Like Straker, Nickich attests in his declaration that, as a Junior Manager for Costco from December 2020 to June 2022, he "regularly worked over 40 hours a week," "generally worked 50 hours each week," and that during busy periods, "worked about 60 to 70 hours per week." (Nickich Decl. ¶¶ 29, 34.) Nickich states that he was scheduled to work "five nine-hour shifts per week," but that he was required to work "six or even seven shifts per week" during busy periods. (*Id.* ¶¶ 30–31.) Like Straker and Lock, Nickich affirms that he worked longer shifts than he was scheduled to work; he affirms that he "generally worked about 10 hours per day," that he "regularly worked 10 to 12 hours per day," and that he worked even more during busy periods. (*Id.* ¶¶ 31, 33.) He also attests that he "was not able" to take an "uninterrupted meal break exceeding 15 minutes." (*Id.* ¶ 32.) Nickich declares that he knows "that Junior Managers were paid salary without overtime pay" because "the General Manager and the Payroll HR Supervisor

4

told [him] that Junior Managers are all paid the same way . . . when they offered [him] the promotion in about December 2020." (*Id.* ¶ 42.)

On April 16, 2024, Defendant filed a sur-reply in further support of its Motion, asserting that statements in Plaintiffs' declarations contradicted the Complaint's allegations regarding whether Plaintiffs were harmed by Costco's provision of allegedly inaccurate wage statements. (Def.'s Sur-reply, ECF No. 27.) Plaintiffs filed a sur-reply on April 18, 2024 (Pls.' Sur-reply, ECF No. 28).

After the parties filed their briefing, the Second Circuit decided *Guthrie v. Rainbow Fencing, Inc.*, 113 F.4th 300 (2d Cir. 2024), which clarified the showing a plaintiff must make to establish standing to bring a wage notice or wage statement claim under Section 195 of the NYLL. On September 6, 2024, the parties filed a joint notice of supplemental authority addressing *Guthrie* and their respective positions on whether Plaintiffs meet the standard for demonstrating standing to assert a Section 195(3) claim to challenge allegedly inaccurate wage statements. (Joint Not. of Supp. Auth., ECF No. 30.)

## LEGAL STANDARDS

### I. Rule 12(b)(1) Motion to Dismiss

A district court properly dismisses a claim under Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411, 416–17 (2d Cir. 2015).[1] At the pleading stage, the Second Circuit has "recognized that a Rule 12(b)(1) motion challenging subject matter jurisdiction may be either

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, and citations.

5

facial, i.e., based solely on the allegations of the complaint and exhibits attached to it, or fact-based, i.e., based on evidence beyond the pleadings." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022). Where a party raises a facial challenge to the court's subject matter jurisdiction, "the plaintiff has no evidentiary burden"; the district court need only "determine whether the [p]leading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016); *see also Lugo v. City of Troy*, 114 F.4th 80, 87 (2d Cir. 2024). In assessing whether a claim should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), a court "must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

Where a party has placed jurisdictional facts into dispute by "offer[ing] extrinsic evidence that contradicts the material allegations of the complaint," however, "the court has the obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Harty*, 28 F.4th at 442. Where the defendant raises a fact-based challenge and the extrinsic evidence "reveals the existence of factual problems," the plaintiff "will need to come forward with evidence controverting that presented by the defendant regarding standing." *Lugo*, 114 F.4th at 87. "In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon*, 752 F.3d at 243; *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 120 (2d Cir. 2017) (same). "[I]f the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing," the plaintiffs "are entitled to rely" on the complaint's allegations. *Carter*, 822 F.3d at 57.

6

## II. Standing

Article III of the Constitution "limits the federal judicial power to deciding 'Cases' and 'Controversies.'" *Soule v. Conn. Ass'n of Sch.*, 90 F.4th 34, 45 (2d Cir. 2023) (citing U.S. Const. art. III § 2). A case or controversy only exists when the plaintiff has "standing" to sue because they have "a personal stake in the outcome of the litigation." *Id.* (citing *United States v. Texas*, 599 U.S. 670 (2023)). In order to establish Article III standing, a plaintiff must show: "(1) that they suffered an injury in fact, (2) that the injury is fairly traceable to Defendants' challenged conduct, and (3) that the injury is likely to be redressed by a favorable judicial decision." *Id.* (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). The Supreme Court has clarified that where "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right," a defendant's violation of that statute does not "automatically satisf[y] the injury-in-fact requirement"; a plaintiff must still demonstrate a concrete injury caused by that statutory violation. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). A concrete injury is one that "has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms. . . ." *Id.* at 417 (quoting *Spokeo*, 578 U.S. at 340–41).

In the context of a wage statement claim under Section 195(3) of the NYLL, "a plaintiff cannot rely on technical violations of the [NYLL]" to establish an injury-in-fact "but must allege actual injuries suffered as a result of the alleged . . . wage statement violations." *Guthrie*, 113 F.4th at 305 (quotation marks omitted). In order to establish such an actual injury, a plaintiff must demonstrate "some causal connection between the lack of accurate notices and [the alleged] downstream harm." *Id.* at 308. A plaintiff need not, however, establish an injury that is greater than or different from the loss of wages or overtime pay alleged in their lawsuit. *Id.* at 309. A

7

plaintiff can establish an injury-in-fact by "show[ing] that he or she would have undertaken . . . advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided." *Id.* at 308. A plaintiff may be able to establish a concrete injury in the form of a financial harm, for example, by showing that "inaccurate or noncompliant notices prevented the employee from obtaining full payment of wages in a timely fashion." *Id.* at 309.

## DISCUSSION

The Complaint alleges that Plaintiffs were misclassified as overtime-exempt employees and that their wage statements failed to provide an accurate number of hours that Plaintiffs worked in violation of Section 195(3). *See* NYLL § 195(3) (requiring that "[f]or all employees who are not exempt from overtime compensation . . . the statement shall include," *inter alia*, "the number of regular hours worked" and "the number of overtime hours worked"); *see also* Compl. ¶¶ 23–24, 39–40, 57–58, 104–06. The Complaint alleges that Plaintiffs suffered one injury from Costco's violation of Section 195: that the inaccurate wage statements failed to provide Plaintiffs "with the information necessary to determine whether their weekly hours ever exceeded 40 in a single workweek, entitling them to overtime." (Compl. ¶ 109.) The Complaint alleges that this lack of information "hindered" Plaintiffs' "ability to challenge the unlawful wage payment at the time of the payment." (*Id.* ¶ 110.)

Costco argues that the allegation that Plaintiffs did not have "information necessary to determine whether their weekly hours ever exceeded 40 in a single workweek" (*id.* ¶ 109) is not

8

true. (Def.'s Sur-reply at 1–2.)[2] Specifically, Costco asserts that Plaintiffs' declarations show that Plaintiffs knew they were working more than forty hours a week at the time that Plaintiffs received their wage statements. (*Id.*)

In their declarations, each of the Plaintiffs attests that he worked more than forty hours a week while employed as Junior Managers at Costco and identifies the number of hours per week that he generally worked. (*See* Lock Decl. ¶¶ 26, 33 ("65 hours each week"); Straker Decl. ¶¶ 27, 31 ("50 hours each week," but "about 60 to 70 hours per week" during busy seasons); Nickich Decl. ¶¶ 29, 34 ("50 hours each week," but "about 60 to 70 hours per week" during busy seasons).) None of the Plaintiffs explicitly state *when* they learned that they were generally working these numbers of hours per week. Each of the Plaintiffs, however, describes their typical schedules and work hours in detail, and the typical weekly shifts and hours they describe exceed forty hours in any given week. (*See* Lock Decl. ¶¶ 27–32; Straker Decl. ¶¶ 28–30; Nickich Decl. ¶¶ 30–33; *see also supra* Background Section.)

For example, Lock attests that he "*regularly* worked over 40 hours a week," that he "*generally* worked 65 hours each week," that he was scheduled to work "five nine-hour shifts per week," that he was scheduled "to work a sixth nine-hour shift" during busy periods, and that he "had to work before and after [his] scheduled shift." (Lock Decl. ¶¶ 26–28, 30, 33 (emphasis supplied).) Thus, according to Lock, he worked 45 to 65 hours per week when employed by Costco as a Junior Manager. Straker attests that he "regularly worked over 40 hours a week," that he "generally worked 50 hours each week," that he "worked about 60 to 70 hours per week"

---

[2] Costco raises several other arguments in support of its Motion. (*See* Def.'s Br. at 3–8.) Because I find that Plaintiffs have failed to establish standing to bring their claim under Section 195 of the NYLL, I do not reach Costco's other arguments.

9

during busy seasons, that he was scheduled to work "five nine-hour shifts per week," that at times he worked a sixth shift during busy periods, that he "regularly worked about 10 to 12 hours per day," and that he "regularly worked 12 or more hours per day" during busy periods. (Straker Decl. ¶¶ 27–29, 31.) Thus, according to Straker, he worked 50 to 72 hours per week when employed by Costco as a Junior Manager. Finally, Nickich attests that he "generally worked 50 hours each week," that he "worked about 60 to 70 hours per week" during busy periods, that he was scheduled to work "five nine-hour shifts per week," that he was required to work "six or even seven shifts per week" during busy periods, that he "generally worked about 10 hours per day," and that he "regularly worked 10 to 12 hours per day" or more during busy periods. (Nickich Decl. ¶¶ 29–31, 33–34.) Thus, according to Nickich, he worked 50 to 84 hours per week.

  Facts set forth in Plaintiffs' declarations thus demonstrate that each Plaintiff knew their weekly work schedules at the time that they were working those shifts and that they therefore knew their weekly hours exceeded forty hours per week. These facts directly contradict the Complaint's allegation that Costco's provision of inaccurate wage statements to Plaintiffs failed to provide them "with the information necessary to determine whether their weekly hours ever exceeded 40 in a single workweek, entitling them to overtime" and that "[t]his hindered Plaintiffs . . . ability to challenge the unlawful wage payment at the time of the payment." (Compl. ¶¶ 109–10.) Because these declarations "contradict[] the material allegations of the complaint," I am obligated to consider the declarations in resolving Costco's Motion. *Harty*, 28 F.4th at 442.

  Plaintiffs did not submit any additional evidence or request leave to submit any evidence in light of Costco's factual challenge to their standing to bring a Section 195(3) claim. (*See* Pl.'s

10

Sur-reply.) Plaintiffs' declarations demonstrate that Plaintiffs knew they were working more than forty hours a week at the time they worked those hours, and Plaintiffs have not identified any evidence indicating otherwise. Plaintiffs have therefore failed to demonstrate that Costco's allegedly inaccurate wage statements caused them injury by failing to notify them that they worked over forty hours a week, as alleged in the Complaint. (*See* Compl. ¶¶ 109–10.) The Complaint does not allege any other reason that the inaccurate wage statements prevented the Plaintiffs from obtaining full payment of their wages in a timely fashion.

For all of these reasons, Plaintiffs have failed to demonstrate that they suffered an actual injury resulting from Costco's provision of allegedly inaccurate wage statements, such as the inability to timely advocate for unpaid wages or timely challenge their misclassification as exempt employees, or that there is "some causal connection between the lack of accurate" wage statements and such "downstream harm[s]" as required by *Guthrie*, 113 F.4th at 305, 308. Because Plaintiffs lack standing to bring the wage statement claim under NYLL Section 195(3) claim, this claim is dismissed.

## CONCLUSION

For the reasons set forth above, Defendant's Partial Motion to Dismiss (ECF No. 18) is granted and the Complaint's third cause of action alleging a violation of NYLL Section 195(3) is dismissed.

Dated: Central Islip, New York
       November 8, 2024
       **November 8, 2024**

                                          */s/ Nusrat J. Choudhury*
                                          NUSRAT J. CHOUDHURY
                                          United States District Judge