UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KAI LOCK, KYLE STRAKER, MICHAEL
NICKICH, and on behalf of themselves and
all others similarly situated,

                                Plaintiffs,          **MEMORANDUM AND ORDER**

      v.                                       23-cv-7904 (SJB) (ST)

COSTCO WHOLESALE CORPORATION,

                                Defendant.
------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

      Kai Lock, Kyle Straker, and Michael Nickich ("Plaintiffs") sued Costco Wholesale Corporation ("Costco" or "Defendant") to recover unpaid overtimes wages and other damages for violations of the Fair Labor Standards Act ("FLSA"), and the New York Labor Law ("NYLL"). *See* Compl., ECF No. 1.  Before this Court is Plaintiffs' motion for conditional certification of a proposed FLSA Collective (the "Motion").  For the reasons discussed below, the Motion is DENIED without prejudice.

## BACKGROUND

### I. FACTUAL BACKGROUND

      Plaintiffs worked as Junior Managers at Costco between 2020 and 2022.  *Id.* ¶¶ 13, 31, 47. As Junior Managers, Plaintiffs were classified as overtime-exempt employees and regularly worked over 40 hours a week.  *Id.* ¶¶ 4, 14–19, 32–36, 48–53.  As such, Costco paid Plaintiffs a fixed salary for 40 hours of work each week and did not pay Plaintiffs overtime pay when they worked more than 40 hours.  *Id.* ¶¶ 13, 19–21, 31, 36–38, 47, 52–55, 95–96.  However, Plaintiffs

claim that their overtime-exempt status is a misclassification and that they are accordingly entitled to overtime pay. *Id.* ¶ 94.

In support of their Motion, Plaintiffs and opt-in Maria Smith submit declarations, which the Court summarizes below. *See* Lock Decl., ECF No. 24-2; Straker Decl., ECF No. 24-3; Nickich Decl., ECF No. 24-4; Smith Decl. 24-5.

Lock currently works at Costco's Nesconset store, located at 3000 Middle Country Rd., Nesconset, New York 11767. Lock Decl. ¶ 2. In his declaration, he attests that, as a Junior Manager from June 2021 to about January 2022, he "regularly worked over 40 hours a week" and that he "generally worked 65 hours each week." *Id.* ¶¶ 5, 7, 26, 33. He further attests that he was scheduled to work "five nine-hour shifts per week," and during busy times "a sixth nine-hour shift." *Id.* ¶¶ 27–28. Lock additionally affirms that he had to work before and after his scheduled shift because while he was "scheduled to begin working at 3:00 am . . . for approximately half of [his] shifts," he "was called to come in at 1:00 am or 2:00 am," and while his "typical shift was scheduled to end at noon," he was "always required . . . to stay late, not leaving until between 2:00 pm and 5:00 pm." *Id.* ¶¶ 31–32. During these shifts, Lock attests that he "always had to take a shortened meal break" and "was not able to take [an] uninterrupted meal break exceeding 10 minutes." *Id.* ¶ 29. Lock additionally attests that he "know[s] that Junior Managers were paid a salary without overtime pay" because he "worked over 40 hours every week and was never paid overtime" and because he has "spoken to other Junior Managers about not getting overtime pay despite the fact that [they] work over 45 hours per week." *Id.* ¶ 41.

Lock also attests that "almost none" of his time was spent on "typical management-type duties." *Id.* ¶ 18. He claims that he "never wrote a schedule and performed only three write-ups," and that those write-ups were at the direction of another manager. *Id.* In general, Lock claims that

2

he did not exercise much discretion over how his job was performed or how his department was run. *Id.* ¶ 19. For example, according to Lock, his Senior Manager did the scheduling. *Id.* Lock also claims that he was "barely involved in disciplinary decisions" and was "unable" to hire or fire employees. *Id.* ¶ 23. Other managers did not seek Lock's recommendations regarding firing employees. *Id.* ¶ 24. Lock attests that he was never the highest-ranking manager on duty at the store, and that he worked with at least one Senior Manager or General Manager on every shift. *Id.* ¶ 25.

Straker worked at both the Nesconset store and the Holbrook store, located at 125 Beacon Drive, Holbrook, New York 11741. Straker Decl. ¶¶ 3, 4. In his declaration, he attests that, as a Junior Manager from July 2020 to 2022, he "regularly worked over 40 hours a week," "generally worked 50 hours each week," and "worked about 60 to 70 hours per week" during busy seasons. *Id.* ¶¶ 2, 9–10, 27, 31. Straker affirms that he was scheduled to work "five nine-hour shifts per week" and "at times," a sixth shift. *Id.* ¶¶ 28–29. He attests that during his shifts, he "regularly worked about 10 to 12 hours per day" and, during the busy periods, he "regularly worked 12 or more hours per day." *Id.* ¶¶ 28–29. He also states that he "regularly" could only take a meal break for fifteen minutes or less. *Id.* ¶ 30. Straker affirms that he knew "that Junior Managers were paid a salary without overtime pay" because that information "was stated on the job postings for these positions," which were "either placed on the bulletin board by the breakroom or were available through the company portal." *Id.* ¶ 39.

Straker further attests that he spent the "vast majority" of his time performing non-management work. *Id.* ¶ 16. He specifically asserts that less than 20% of his time each week was spent on typical "management-type duties." *Id.* ¶ 19. According to Straker, the management duties that he did perform were at others' discretion, and he did not exercise much discretion over how

3

his job was performed or how his department was run. *Id.* ¶ 20. For example, Straker states that he was assigned the task of drafting the schedules, would send those schedules to his Senior Manager, who would then review and make changes to them. *Id.* ¶ 22. Straker did not hire or fire employees and was "unable to do so." *Id.* ¶ 24. Straker claims that Costco did not ask for his recommendations on discipline or termination. *Id.* ¶ 25. Although Straker was tasked with completing write-ups, he did not "independently decide to monitor" his coworkers. *Id.* ¶ 26.

Nickich is currently employed at the Westbury store, located at 1250 Old Country Rd., Westbury, New York 11590. Nickich Decl. ¶ 2. He attests in his declaration that, as a Junior Manager from December 2020 to June 2022, he "regularly worked over 40 hours a week," "generally worked 50 hours each week," and that during busy periods, "worked about 60 to 70 hours per week." *Id.* ¶¶ 29, 34. Nickich states that he was scheduled to work "five nine-hour shifts per week," but that he was required to work "six or even seven shifts per week" during busy periods. *Id.* ¶¶ 30–31. Like Straker and Lock, Nickich affirms that he worked longer shifts than he was scheduled to work; he affirms that he "generally worked about 10 hours per day," that he "regularly worked 10 to 12 hours per day," and that he worked even more during busy periods. *Id.* ¶¶ 31, 33. He also attests that he "was not able" to take an "uninterrupted meal break exceeding 15 minutes." *Id.* ¶ 32. Nickich declares that he knows "that Junior Managers were paid salary without overtime pay" because "the General Manager and the Payroll HR Supervisor told [him] that Junior Managers are all paid the same way . . . when they offered [him] the promotion in about December 2020." *Id.* ¶ 42.

Nickich also attests that less than 20% of his time was spent on "typical management-type duties," and that his management duties were performed at the discretion of Senior Managers. *Id.* ¶¶ 20, 21. He claims that he "did not exercise much discretion" over how his job was performed.

4

*Id.* ¶ 21. For example, he claims that he was periodically assigned to review timecards, but did not "take the independent initiative to do this task" and rather "mechanically reviewed his coworkers' timecards and compared them to their schedules." *Id.* ¶ 24. According to Nickich, he did not hire or fire anyone and was "unable to do so." *Id.* ¶ 26. Also according to Nickich, Costco did "not ask for his recommendations on discipline or termination," and although "he was responsible for documenting performance and attendance issues with the employees in his department," he "did not make recommendations as to how these issues should be handled." *Id.* ¶¶ 27–28. Rather, he was "merely required to complete a write-up form when someone violated a company policy and turn the form over to his Senior Manager." *Id.* ¶ 29.

Smith is currently employed at the Nesconset store. Smith Decl. ¶ 2. She has held several junior management positions during her employment. *See generally id.* She attests that she regularly works over 40 hours per week, and "four shifts per week lasting just over 10 hours and one 12-to-13 hour shift per week." *Id.* ¶¶ 62, 63. In total, Smith attests that she generally works 50 to 55 hours each week. She claims that she "almost always" has to take a "shortened" meal break, and rarely is able to "take uninterrupted meal break[s] exceeding 15 minutes." *Id.* ¶ 64, 65. Although her schedule was "different" as a Food Manager and Membership Manager, Smith claims that she experienced the same problems during her time in both roles. *Id.* ¶ 69.

During her tenures as a Membership Manager, Center Manager, and Food Manager, a "small percentage" of her time was/is spent on "typical management duties." *Id.* ¶¶ 28, 47, 52. Specifically, Smith attests that she spent/spends less than one hour per week drafting write-ups. *Id.* ¶¶ 30, 31, 48, 52. While she previously spent one hour per week scheduling (during her time as a Membership Manager), she does not schedule at all as a Center Manager, and did not schedule at all as a Food Manager. *Id.* ¶¶ 30, 31, 48, 52. She was/is "directed" to draft write-ups, which

5

were/are reviewed and approved by other managers. *Id.* ¶ 32, 33. Like Plaintiffs, she attests that she did not, and does not, hire or fire any employees and has been "unable to do so." *Id.* ¶¶ 37, 54. Her duties are, and have been, performed at the discretion of others. *Id.* ¶¶ 49, 53. As a Junior Manager, she has never been the highest-ranking manager on duty. *Id.* ¶ 57.

## II.  PROCEDURAL HISTORY

On October 23, 2023, Plaintiffs sued Defendant alleging three causes of action on behalf of themselves and others similarly situated: (1) failure to pay overtime wages under the FLSA; (2) failure to pay overtime wages under the NYLL; and (3) failure to supply an accurate statement of wages as required by the NYLL. Compl. ¶¶ 15–17.

On April 5, 2024, Plaintiffs filed this Motion to conditionally certify their proposed collective under the FLSA. *See* Mot., ECF No. 24. In addition to the declarations, Plaintiffs submit several other documents in support of the Motion, including a Summary of the Conditional Certification Notice Plan, the Proposed Notice, the Consent to Join Form, the Proposed Email Notice, and the Reminder Notice. *See* ECF No 24-1. Plaintiffs seek to conditionally certify, and thus send notice to, a proposed FLSA Collective of "All individuals who worked for Defendant in the State of New York as a Junior Manager at any time since October 23, 2020." *Id.*

Defendant opposed the Motion on April 26, 2024. See Def.'s Mem. Opp'n, ECF No. 29. In opposing the Motion, Defendant submits declarations from other Costco employees. *See* Jovel Decl., ECF No. 29-1; Mendoza Decl., ECF No 29-2; Woods Decl., ECF No 29-3; Nancarrow Decl., ECF No 29-4; Rotondo Decl, ECF No 29-5; Lester Decl., ECF No 29-6; Ward Decl., ECF No. 29-7; Felix Decl., ECF No 29-8; Hughes Decl., ECF No. 29-9. However, to the extent that Defendant's submissions contradict Plaintiffs', they "serve only to create a question of fact; they do not, as a matter of law, defeat the motion for conditional certification." *Riske v. GEICO*, 21-

6

cv-4122 (JMA) (AYS), 2022 WL 17127745, at *7 (E.D.N.Y. Nov. 22, 2022); *see Ugwudiobi v. Int'l Trendz, LLC*, 22-cv-4930 (RER) (CLP), 2024 WL 4333840, at *6 (E.D.N.Y. Sept. 27, 2024) ("Even if defendants were able to support their version of events, disputed issues of fact such as these are not appropriately resolved on a motion for conditional certification."). Defendant's declarations, accordingly, have "limited value to the instant motion." *Costello v. Kohl's Illinois, Inc.*, 13-cv-1359 (GHW), 2014 WL 4377931, at 7* n.7 (S.D.N.Y. Sept. 4, 2014) (citing *Stevens v. HMSHost Corp.,* 10-cv-3571(ILG), 2012 WL 4801784, at *3 (E.D.N.Y. Oct. 10, 2012) ("such evidence cannot be used to undermine a plaintiff's initial showing because doing so would require a court to weigh evidence and determine credibility, which is not appropriate until the second stage after discovery." (further citations and quotation marks omitted)).

On November 8, 2024, the Honorable Nusrat J. Choudhury dismissed Plaintiffs' NYLL Section 195(3) claim for lack of standing, as Plaintiffs failed to establish that they had suffered an actual injury resulting from Costco's allegedly inaccurate wage statements. *See* Memorandum & Order, ECF No. 31.

## **LEGAL STANDARD**

Under the FLSA, an employee suing his employer for unpaid wages may do so as a collective—*i.e.*, on behalf of himself "and other employees similarly situated." 29 U.S.C. § 216(b); *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 519 (2d Cir. 2020) ("where the conditions of [the FLSA] are met, employees have a substantive 'right' to proceed as a collective"). Certifying FLSA Collectives based on the "similarly situated" requirement involves two steps. *Scott*, 954 F.3d at 515. This litigation is currently at step one—conditional certification—in which the Court "permits a notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that

7

violated the law." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016). Those potential plaintiffs may then "opt-in" to the case by filing written consent on the docket. *Ugwudiobi*, 2024 WL 4333840, at *4. At step two, "with the benefit of additional factual development," the court decides "whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs." *Glatt*, 811 F.3d at 540. If the record reveals that the opt-in plaintiffs are not, then the Court may decertify the collective and dismiss the opt-in plaintiffs' claims without prejudice. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).

In deciding whether to conditionally certify the collective, and thus authorize notice, the threshold issue before the Court is whether the opt-in plaintiffs are similarly situated to the named Plaintiffs. Plaintiffs are "similarly situated" if they "are alike with regard to some material aspect of their litigation." *Scott*, 954 F.3d at 516. The relevant inquiry "is not whether plaintiffs in the potential collective are identically situated, or that they possess the same attributes with respect to their job, but rather whether they share common, material questions of fact or law with respect to their claims." *Hernandez v. NHR Human Resources, LLC*, 20-cv-3109 (PGG) (DF), 2021 WL 2535534, at *10 (S.D.N.Y. June 18, 2021). Put differently, "plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Scott*, 954 F.3d at 516.

At the conditional certification stage, the Court's inquiry is limited, as the merits of the plaintiffs' claims are not at issue. *Ugwudiobi*, 2024 WL 4333840, at *4; *Xia v. New Yung Wah Carrier LLC*, 21-cv-475 (HG) (VMS), 2023 WL 130830, at *4 (E.D.N.Y. Jan. 9, 2023) ("whether the plaintiff will eventually succeed on the merits of his FLSA claim is immaterial." (citations omitted)). The Court should conditionally certify the collective so "long as the plaintiffs'

8

allegations 'are sufficient on their face' to support certification—even if such allegations conflict with the account asserted by the defendants." *Valdez v. MichPat & Fam, LLC*, 20-cv-2570 (AMD), 2022 WL 950450, at *3 n.3 (E.D.N.Y. Mar. 30, 2022) (citing *Gui Zhen Zhu v. Matsu Corp*, 424 F. Supp. 3d 253, 264 (D. Conn. 2020)).

As "the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist," the standard of proof is "low." *Myers*, 624 F.3d at 555 (emphasis in original). Although "'unsupported' assertions cannot suffice, the standard is nonetheless 'fairly lenient.'" *Santiago v. Cuisine By Claudette, LLC*, 23-cv-2675 (OEM), 2023 WL 8003323, at *2 (E.D.N.Y. Nov. 17, 2023) (citing *Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 348 (S.D.N.Y. 2017)); *see Xia*, 2023 WL 130830, at *6 ("the factual showing required for conditional certification is a 'lenient one.'"). Plaintiffs can meet this "modest factual showing" through their "own pleadings, affidavits, and declarations, including any hearsay statements contained therein and the Court is required to draw all inferences in his favor without resolving credibility or factual disputes." *Taylor v. R.J.T. Motorist Serv., Inc.*, 19-cv-1155 (PMH), 2020 WL 4937483, at *2 (S.D.N.Y. Aug. 24, 2020) (cleaned up) (citing *Chen v. Kicho Corp.*, 18-cv-7413, 2020 WL 1900582, at *6 (S.D.N.Y. Apr. 17, 2020)); *see Yi Mei Ke v. JR Sushi 2 Inc.*, 19-cv-7332 (PAE) (BCM), 2021 WL 148751, at *8 (S.D.N.Y. Jan. 15, 2021) ("courts regularly rely on plaintiffs' affidavits and hearsay statements in determining the propriety of sending notice.").

## **DISCUSSION**

As an initial matter, this Court declines Defendant's invitation to abandon the two-step process for collective certification. Defendant urges the Court to adopt, instead, the Fifth and Sixth Circuit's approach to collective certification, as it is, in Defendant's opinion, "more consistent with the FLSA's text and purpose of court-ordered notice . . . than the two-phase approach." Def.'s

Mem. Opp'n.

While true that "[n]either the FLSA nor its implementing regulations define the term 'similarly situated,'" *Hoffmann v. Sbarro, Inc.*, 982 F.Supp. 249, 261 (S.D.N.Y. 1997), the Second Circuit has "endorsed a two-step process for certifying FLSA collective actions based on the 'similarly situated' requirement." *Scott*, 954 F.3d at 515 (citing *Glatt*, 811 F.3d at 540). The Second Circuit originally endorsed the two-step method in *Myers*. *See* 624 F.3d at 554–55 ("the district courts of this Circuit appear to have coalesced around a two-step method, a method which, while again not required by the terms of FLSA or the Supreme Court's cases, we think is sensible."). The Second Circuit reaffirmed that endorsement in *Glatt*, 811 F.3d at 540, and later in *Scott*. *See* 954 F.3d at 515. Therefore, courts in this Circuit consistently employ the two-step process. *Ugwudiobi*, 2024 WL 4333840, at *4; *see, e.g.*, *Jackson v. Total Relocation Servs., LLC*, 23-cv-4118 (KPF), 2024 WL 4850814, at *5 (S.D.N.Y. Nov. 21, 2024) ("In the Second Circuit, the certification of a FLSA collective action proceeds in two steps."); *Xia*, 2023 WL 130830, at *3 ("the Second Circuit has endorsed a two-step method to determine whether a case should proceed as a collective action under FLSA"); *Tueros v. Urban Health Plan, Inc.*, 21-cv-4525 (JMF) (RWL), 2022 WL 2752070, at *6 (S.D.N.Y. July 14, 2022) ("The Second Circuit has endorsed a two-step method used by district courts in determining whether to exercise their discretion to certify a collective action under Section 216(b) and to permit notice to be sent to potential opt-in plaintiffs."); *Foster v. City of New York, New York*, 14-cv-4142 (PGG), 2021 WL 1191810, at *5 (S.D.N.Y. Mar. 30, 2021) ("The Second Circuit uses a two-step approach in determining whether opt-in plaintiffs are similarly situated to a named plaintiff."). Defendant cites no cases suggesting that the Second Circuit has departed from its prior holdings. This Court is not at liberty to contravene Second Circuit precedent and, as such, will not abandon the two-step process.

That said, Plaintiffs have failed to make the modest factual showing required for conditional certification at this time. While Plaintiffs have perhaps provided sufficient factual support that other Junior Managers worked more than 40 hours per week, they have not provided enough factual support that other Junior Managers' overtime-exempt status is a misclassification. Without such support, this Court cannot find that Plaintiffs and the proposed FLSA Collective members necessarily share a common material question of law or fact with respect to their claims.

In misclassification cases, courts "consistently hold that a showing of a common formal policy of exemption" is insufficient to certify a collective. *Jibowu v. Target Corp.*, 492 F.Supp.3d 87, 122 (E.D.N.Y. 2020) (citing *Stevens*, 2012 WL 13098466, at *5). A factual showing that Plaintiffs and the proposed FLSA Collective members operated under the same job description is similarly insufficient. *Amhaz v. Booking.com (USA), Inc.*, 17-CV-2120 (GBD) (HBP), 2018 WL 4279468, at *8 (S.D.N.Y. Aug. 23, 2018), *report and recommendation adopted*, 2018 WL 4360791 (S.D.N.Y. Sept. 5, 2018). Rather, Plaintiffs must show that they and other Junior Managers "were similarly situated with respect to the claim that they were required to perform non-managerial job duties in contravention of the formal job description." *Jibowu*, 492 F.Supp.3d at 122–23 (citing *Amhaz*, 2018 WL 4279468, at *8). In other words, Plaintiffs must essentially show that Defendant was unlawfully misclassifying the Junior Managers in the proposed FLSA Collective. *Id.* at 123.

Here, Plaintiffs have not made such a showing. At most, Plaintiffs and opt-in Smith vaguely and generally assert that they have observed other Junior Managers "performing similar duties" to those they have performed. *See, e.g.*, Lock Decl. ¶ 37 ("Costco's other Junior Managers performed similar duties to those that I performed. I know this because I have observed other Junior Managers performing the same job duties as I did when I was a Junior Manager."), ¶ 38

11

(listing names of Junior Managers observed); Straker Decl. ¶ 36 ("Costco's other Junior Managers performed similar duties to those that I performed. I know this because I saw the other Junior Managers performing the same job duties as I did when I was a Junior Manager. I made these observations as an hourly employee and as a Junior Manager."), ¶ 37 (listing names of Junior Managers observed); Smith Decl. ¶ 72 ("Costco's other Junior Managers performed similar duties to those that I performed. I know this because I have observed other Junior Managers performing the same job duties as I have done as a Junior Manager."), ¶ 73 (listing names of Junior Managers observed).

To his declaration, Nickich attaches Costco's 2022 "Job Analysis" for the Assistant Receiving Manager position. Nickich Decl. App'x 1. He claims that this form reflects the "duties" of this Junior Manager position. *Id.* ¶ 39. However, whether this document establishes that Plaintiffs are similarly situated to the proposed FLSA Collective members is, at best, inconclusive. To Plaintiffs' credit, the document provides, for example, that one job function is "assist[ing] in receiving duties and other areas of the department as needed," suggesting that the job possibly requires some non-managerial work. *See id.* App'x 1. On the other hand, the document describes managerial job functions and provides that the job is a "full-time management/leader position (45+ hours per week)." *See id.* Without further explanation and analysis from Plaintiffs, it is unclear whether and to what extent this document reflects that the proposed FLSA Collective members were, indeed, not performing managerial duties so as to be misclassified as overtime exempt.

This Court emphasizes that conditional certification is a low bar. To be sure, "[e]ven if lacking in specificity, 'personal observation and conversations with a small collective of co-workers who share the same duties and responsibilities' can suffice to make" the modest factual showing required for conditional certification. *Xia*, 2023 WL 130830, at *6 (citing *Miranda v.*

12

*Gen. Auto Body Works, Inc.*, 17-cv-4116 (AMD) (RER), 2017 WL 4712218, at *2 (E.D.N.Y. Oct. 18, 2017)). However, given Plaintiffs' failure to include details such as when and to what extent they observed other Junior Managers performing non-managerial duties, and which duties those were, Plaintiffs have not made even a modest factual showing that they are similarly situated to the proposed FLSA Collective members. *See Jenkins v. TJX Cos. Inc.*, 853 F.Supp.2d 317, 321 (E.D.N.Y. 2012) (denying conditional certification where the plaintiff provided "no other affidavits, depositions, or even hearsay evidence that he was actually aware of other [Assistant Store Managers] who also primarily performed non-exempt duties.").

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for conditional certification of the proposed FLSA Collective is DENIED without prejudice. Plaintiffs are granted leave to renew their Motion if they can make the required factual showing that Plaintiffs and the proposed FLSA Collective members are similarly situated with respect to the claim that they are/were misclassified.

**SO ORDERED.**

                                                        /s/ Steven Tiscione
                                                        Steven L. Tiscione
                                                        United States Magistrate Judge
                                                        Eastern District of New York

Dated: Central Islip, New York
          March 31, 2025